UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PATTI F.,[1]

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[2]

Defendant.

Case No.:  22-cv-0757-MMP

**ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW**

Plaintiff Patti F. ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits under Title II of the Social Security Act. [ECF No. 1, ¶ 3.] Plaintiff brings her appeal pursuant to 42 U.S.C. § 405(g). Before the Court is the parties' Joint Motion for Judicial Review. [ECF No. 16.] The parties have consented to this Court for all purposes. [ECF No. 25.]

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

[2] Martin O'Malley, the current Commissioner of Social Security, is automatically substituted as defendant for Kilolo Kijakazi, the former Acting Commissioner of Social Security, pursuant to Federal Rule of Civil Procedure 25(d).

1

After a thorough review of the parties' submissions, the administrative record, and the applicable law, and for the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner of Social Security.

## I.    PROCEDURAL HISTORY

On January 13, 2020, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging a disability onset date of December 3, 2018. [ECF No. 16 at 1–2]; Administrative Record ("AR") 18. The claim was denied initially on April 16, 2020, and upon reconsideration on July 16, 2020. AR 18, 76–81, 83–87. Plaintiff filed a written request for hearing. AR 89–90.

On January 28, 2021, the Administrative Law Judge ("ALJ") held a telephonic hearing on the matter in which Plaintiff, appearing with counsel, as well as a vocational expert testified. AR 18, 35–46. On June 10, 2021, the ALJ issued a decision denying benefits. [ECF No. 1, ¶ 5]; AR 18–27. Plaintiff filed a request for Appeals Council review, which was denied on April 6, 2022. AR 307–08, 1–6. Accordingly, the ALJ's decision is the final decision of the Commissioner of Social Security.

## II.    SUMMARY OF ALJ'S FINDINGS

### A.    The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and (b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least twelve (12) months; if not, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), § 404.1509 (setting forth the twelve (12) month duration

requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. 20 C.F.R. § 404.1520(e). The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv). Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *see Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe – and must assess his "work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1; 20 C.F.R. §§ 404.1545(a)(1)–(2) and (e); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A] n RFC that fails to take into account a claimant's limitations is defective"). An RFC determination must be based on "all the relevant evidence" including the diagnoses, treatment, observations, and opinions of medical sources. 20 C.F.R. § 404.1545(a)(1)–(3). A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ, however, errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence

in the record" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step four of the sequential process, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f)–(g).

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national economy" the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1); *see Hill*, 698 F.3d at 1162. The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Id*. The determination of this issue comprises "the fifth and last step" in the sequential analysis. 20 C.F.R. § 404.1520(a)(4)(v).

## B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found Plaintiff "had not engaged in substantial gainful activity since December 3, 2018, the alleged onset date." AR 21.

At step two, the ALJ found Plaintiff has the following severe impairments: "residuals of cervical and lumbar surgeries with radiculopathy; and obesity." *Id.* (citing 20 CFR § 404.1520(c)).

The ALJ found Plaintiff's symptoms of right shoulder pain was not a severe impairment because, within a period of less than twelve consecutive months after her surgery on January 3, 2020, physical testing showed "dramatically" improved and "intact" range of motion. AR 21. The ALJ also found Plaintiff's hypertension, fatty liver disease, varicose veins, sleep apnea, paralysis of vocal cords, Schatzki's ring, and type two diabetes mellitus were non-severe medically determinable impairments. *Id.* In addition, the ALJ found Plaintiff's medically determinable mental impairments of "history of dysphoria in

long term remission, depression, and anxiety, considered singly and in combination," were not severe. AR 21–22.

At step three, the ALJ found the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." AR at 23 (citing 20 CFR § 404.1520(d), § 404.1525 and § 404.1526). The ALJ stated he considered Plaintiff's "medically determinable physical impairments under all of the medical listings, including listing 1.16" and found the criteria of listing 1.16 was not satisfied because the medical file did not reflect "the requisite muscle weakness, decreased sensation, or decreased deep tendon reflexes . . ." nor was there a documented medical need for an assistive device. *Id.* The ALJ also found, though there is no listing for obesity, "there was no impairment that, in combination with obesity, met the requirements of a listing." *Id.*

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR § 404.1567(b), specifically as follows: can lift and/or carry 20 pounds occasionally and ten pounds frequently; can stand and/or walk for six hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; can occasionally climb ramps and stairs but should never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure [to] extreme cold, vibration, unprotected heights, and moving and dangerous machinery." AR 23.

In determining Plaintiff's RFC, the ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p" and "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." *Id.* The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were

inconsistent with the medical evidence and Plaintiff's daily activities. AR 24; *see* AR 24–25.

The ALJ next considered three medical opinions, finding persuasive the opinions of state agency medical consultants Dr. Vu and Dr. Do and finding the opinion of Plaintiff's treating orthopedic, Dr. Barba, unpersuasive. AR 25–26. In particular, the ALJ summarized state agency medical consultant Dr. Vu's opinion from April 15, 2020, finding Plaintiff "had the capacity to lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk for six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach overhead with the right upper extremity; and should avoid concentrated exposure to extreme cold and hazards." AR 25. The ALJ then addressed Dr. Do's opinion, finding "[a]lthough the claimant alleged worsening symptoms, the state agency medical consultant upon reconsideration, Dr. Do, determined on July 10, 2020 that there were no change since the initial assessment [by Dr. Vu]." AR 25. The ALJ then found "the lifting, carrying, sitting, standing, postural, and environmental limitations were well supported by the objective evidence of record and consistent with" Plaintiff's level of activities of daily living. *Id.* However, the ALJ concluded the "right upper extremity limitation was not necessary" explaining Plaintiff's "right shoulder impairment resolved in less than 12 consecutive months." *Id.* The ALJ found the opinions of Drs. Vu and Do overall persuasive; however, the ALJ also required the additional environmental limitations to "avoid concentrated exposure to vibration and unprotected heights because she was status post cervical and lumbar spine surgeries" reasoning "these sources did not personally observe the claimant and only reviewed the file." *Id.*

The ALJ next found Dr. Barba's medical opinion dated December 29, 2020, was unpersuasive because he "did not cite to specific clinical or diagnostic findings in support of his opinion"; the restrictive limitations were inconsistent with Plaintiff's activities of

daily living; and Dr. Barba's medical opinion "was not supported by the objective evidence and was not consistent with the evidence from other sources." AR 25–26.

At step four, the ALJ determined Plaintiff "was capable of performing past relevant work as a buyer and procurement manager," which did not require the performance of work-related activities precluded by Plaintiff's RFC. AR 26 (citing 20 C.F.R. § 404.1565).

Accordingly, the ALJ determined Plaintiff had not been under a disability from December 3, 2018, through the date of the ALJ's decision. AR 26.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Woods*, 32 F.4th at 788 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023); *see also Valentine*, 574 F.3d at 690. Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion,

and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The ALJ is responsible for resolving conflicts in medical testimony as well as any ambiguities in the record. *Id*.; *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010; *see also Collings v. Saul*, 856 F. App'x 729, 730 (9th Cir. 2021).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec*., 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id*. at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

## IV.   ANALYSIS

Plaintiff asserts two challenges to the ALJ's opinion: (1) whether the ALJ properly evaluated Dr. Barba's opinion; and (2) "whether the ALJ's 'credibility finding' was properly evaluated" when considering Plaintiff's subjective statements. [ECF No. 16 at 10.] The Court addresses each issue in turn.

### A.   Whether the ALJ Properly Found Dr. Barba's Opinion Unpersuasive

#### 1.   Dr. Barba's Opinion

Plaintiff's orthopedic surgeon, Dr. Barba, provided a "Medical Source Statement of Ability to Do Work-Related Activities" form dated December 29, 2020. AR 969–70. Dr. Barba had treated Plaintiff since September 2018. AR 969. Dr. Barba listed Plaintiff's diagnoses as "cervical/ lumbar stenosis" and identified Plaintiff's symptoms as "chronic neck, left arm pain." *Id*. Dr. Barba opined that Plaintiff's prognosis was fair. *Id*. For the section regarding Plaintiff's ability to do work-related activities, Dr. Barba was asked to check applicable boxes for each question. Dr. Barba opined that Plaintiff could sit for "0-

2 hours" and stand or walk for one hour in an eight-hour workday. *Id.* Dr. Barba opined that Plaintiff must periodically alternate between sitting and standing every fifteen minutes to relieve pain or discomfort. *Id.* With respect to lifting or carrying, Dr. Barba opined that Plaintiff could "rarely" lift and/or carry twenty or twenty-five pounds, "occasionally" lift and/or carry ten pounds, and "frequently" lift and/or carry less than ten pounds.[3] *Id.* Dr. Barba opined that Plaintiff could "rarely" perform upper extremity pushing or pulling and "occasionally" perform lower extremity pushing or pulling. *Id.* When asked how often Plaintiff could perform the following activities in an eight-hour workday, Dr. Barba opined that Plaintiff could "rarely" perform reaching in all directions (including overhead), "occasionally" perform handling (gross manipulation) and fingering (fine manipulation), and "frequently" perform feeling (skin receptors). *Id.* When asked whether Plaintiff's experience of pain or other symptoms was severe enough to interfere with attention and concentration needed to perform even simple work tasks, Dr. Barba checked "frequently." AR 970. Dr. Barba did not identify any environmental limitations. *See id.* With respect to accommodations, Dr. Barba checked the box for "unscheduled breaks" and wrote in the frequency of "every hour" and duration of fifteen minutes. *Id.*

Finally, when asked how often Plaintiff would likely be absent from work due to her impairments or treatments, Dr. Barba checked the box for "4 days or more per month." *Id.* Dr. Barba did not provide any response when asked to "describe any responses to treatment (e.g., medication side effects), which may have implications for work activity" and to "describe the objective findings, clinical observations, and symptomology supporting your assessment." *See id.*

---

[3] The form defines "rarely" as "approximately 1%-5% of an 8-hour workday (cumulative, not continuous)"; "occasionally" as "approximately up to one-third (6%-33%) of an 8-hour workday (cumulative, not continuous)"; and "frequently" as "approximately one-third to two-thirds (34%-66%) of an 8-hour workday (cumulative, not continuous)." AR 969–70.

### 2.     The ALJ Found Dr. Barba's Opinion Not Persuasive

In finding Dr. Barba's opinion not persuasive, the ALJ first noted that "Dr. Barba did not cite to specific clinical or diagnostic findings in support of his opinion." AR 25. The ALJ continued that "[t]o be sure, the undersigned considered Dr. Barba's most recent treatment notes from June 2020, which showed no lumbar spine abnormalities beyond decreased range of motion" and "Dr. Barba further noted the claimant had normal strength in the lower extremities, normal muscle tone, and a non-antalgic gait." AR 25–26 (citing AR 804–05).

Second, the ALJ found "the restrictive limitations by Dr. Barba were inconsistent with the claimant's activities of daily living." AR 26.

Finally, the ALJ found Dr. Barba's medical opinion "was not supported by the objective evidence and was not consistent with the evidence from other sources." *Id.* The ALJ explained that it also considered Third Party Function Reports from Plaintiff's husband and daughter that also alleged Plaintiff "had a limited ability to work due to upper extremity pain" but "in contrary fashion, they both indicated [Plaintiff] could drive and shop in stores for food and medications, activities which required the use of upper extremities." *Id.* (citing AR 196–203, 299–306). The ALJ found "[t]heir statements were also less than fully consistent with the objective evidence showing intact right shoulder range of motion less than 12 months after surgery." *Id.* (citing AR 855).

### 3.     The Parties' Arguments

Plaintiff contends the ALJ erred in finding Dr. Barba's opinion unpersuasive because (1) the ALJ improperly concluded Dr. Barba's opinion was not supported by the objective evidence and not consistent with other sources, and (2) the ALJ improperly found Dr. Barba's opinion was inconsistent with Plaintiff's activities of daily living. [ECF No. 16 at 14–18.] Plaintiff contends both findings are not supported by a reasonable interpretation of the record. [*Id.*]

Defendant maintains the ALJ properly evaluated the medical and non-medical evidence in the record in assessing that Plaintiff was capable of performing a reduced range

of light work, including the prior administrative medical findings of two doctors. [ECF No. 16 at 18.] Defendant contends the ALJ sufficiently evaluated the supportability and consistency when assessing Dr. Barba's opinion. [*Id.* at 22.]

### 4.   Applicable Law

Plaintiff's claim is subject to the 2017 amendments governing the evaluation of medical opinions because it was filed after March 27, 2017. 20 C.F.R. § 404.1520c. The revised regulations eliminated the deference given to medical opinions from treating or examining physicians. *Woods*, 32 F.4th at 787, 792 (citing 20 C.F.R. § 404.1520c(a)). "The new regulations require an evaluation of the 'persuasiveness' of medical opinions based on the following factors: supportability, consistency, relationship factors, specialization, and other factors." *Marie S. v. Kijakazi*, No. 20-CV-2196, 2023 WL 2265227, at *4 (S.D. Cal. Feb. 28, 2023), *report and recommendation adopted*, No. 20-CV-2196, 2023 WL 2637388 (S.D. Cal. Mar. 24, 2023); *see* 20 C.F.R. § 404.1520c(c)(1)–(5).

"'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Woods*, F.4th at 791–92 (citing 20 C.F.R. § 404.1520c (c)(1)). Under the new regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . .  will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) . . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 CFR § 404.1520c(c)(2). Under the new regulations, supportability and consistency are the only two factors that the ALJ *must* specifically explain in the decision. 20 CFR § 404.1520c(b)(2).

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(3)). However, the revised regulations specifically provide the ALJ may, but is not required to, explain the relationship factors. *See* 20 C.F.R. § 404.1520c(b)(2); *Woods*, 32 F.4th at 792 ("However, the ALJ no longer needs to make specific findings regarding these relationship factors.").

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id*. The ALJ must articulate "how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings. *Id*.; *see also* 20 C.F.R. § 404.1520c(b)(2).

5.   <u>Analysis</u>

The ALJ provided three reasons for finding Dr. Barba's opinion unpersuasive. For the reasons set forth below, the Court finds all three reasons are supported by substantial evidence.

First, the ALJ found "Dr. Barba did not cite to specific clinical or diagnostic findings in support of his opinion." AR 25. The ALJ continued "[t]o be sure, the undersigned considered Dr. Barba's most recent treatment notes from June 2020, which showed no lumbar spine abnormalities beyond decreased range of motion" and Plaintiff "had normal strength in the lower extremities, normal muscle tone, and a non-antalgic gait." AR 25–26 (citing AR 804–05). Plaintiff does not specifically challenge the ALJ's conclusion, though she asserts the ALJ improperly "cherry picked" the record by citing to the June 2020 treatment records. [ECF No. 16 at 16.] Defendant asserts that the ALJ properly found Dr. Barba's opinion was unsupported, as he did not cite to specific clinical or diagnostic findings in support of his opinion. [*Id.* at 25.] Defendant maintains that Dr. Barba's opinion was "merely a check-mark form" and Dr. Barba "otherwise provided no explanation regarding the clinical bases of his findings." [*Id.* at 26.]

1   "Supportability means the extent to which *a medical source* supports the medical

2   opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at

3   791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)) (emphasis added). "The more relevant the

4   objective medical evidence and supporting explanations *presented by a medical source* are

5   *to support his or her medical opinion(s)* . . . the more persuasive the medical opinions . . .

6   will be." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). "Under the new regulations, the

7   ALJ appears to be permitted to find an opinion more or less persuasive depending on how

8   well a medical source explains the objective medical evidence." *Marie S.*, 2023 WL

9   2265227, at *10. Here, substantial evidence supports the ALJ's finding that Dr. Barba's

10  opinion was unsupported and thus not persuasive. The ALJ correctly found Dr. Barba "did

11  not cite to specific clinical or diagnostic findings in support of his opinion." AR 25. In fact,

12  Dr. Barba did not provide any response when asked to "describe the objective findings,

13  clinical observations, and symptomology supporting your assessment" to explain his

14  opined limitations on the check-box form. *See* AR 970. Further, the ALJ even considered

15  Dr. Barba's June 2020 treatment notes[4] and found it did not support Dr. Barba's opined

16  restrictions, as the treatment notes showed "no lumbar spine abnormalities beyond

17  decreased range of motion" and Plaintiff had "normal strength in the lower extremities,

18  normal muscle tone, and a non-antalgic gait." AR 25–26. The Court finds substantial

19  evidence supports the ALJ's conclusion. *See* AR 805–06; *see also Woods*, 32 F.4th at 793

20  (finding the ALJ reasonably rejected a concurring medical opinion as "wholly unexplained

21  and thus unsupported" where the medical source simply checked a box on a letter that she

22  concurred with a psychological assessment).

23

24  _____

25  [4] The ALJ referred to these as "Dr. Barba's most recent treatment notes from June 2020."
    AR 25–26. Dr. Barba treated Plaintiff after June 2020, including on August 4, 2020,
26  September 15, 2020, and November 17, 2020, and the ALJ specifically cited treatment
    records from these visits in his opinion. AR 24 (citing 791, 795–96, 800–02); *see* AR 788–
27  92, 793–97, 798–802. To the extent the ALJ implied June 2020 was the most recent of Dr.
28  Barba's treatment, this was inaccurate but inconsequential to the decision.

Next, Plaintiff challenges the ALJ's conclusion that the restrictive limitations opined by Dr. Barba were inconsistent with Plaintiff's activities of daily living, in particular Plaintiff's ability to "drive and shop in stores for food and medication, activities which required the use of upper extremities." *See* AR 26. Plaintiff acknowledges that the ALJ can properly consider daily activities in evaluating a disability application; however, Plaintiff contends the ALJ mischaracterized her daily activities. [ECF No. 16 at 17.] In particular, Plaintiff contends that while she testified she can go grocery shopping, she also testified her older daughters accompanied her and carried the groceries. [*Id.* (citing AR 43).] Plaintiff contends her husband's "Third-Party Function Report" corroborates this limitation, explaining that when she went shopping, it was only for a few items and only takes fifteen to twenty minutes in a store. [*Id.*] Plaintiff argues that whether she can "drive a short distance to a store and do limited grocery shopping with assistance from her daughters is not related to, or reflective of, the ability to perform competitive employment 8 hours per day, 5 days per week." [*Id.* at 17–18.]

Plaintiff testified at the hearing that she was not able to do chores like cooking or cleaning, and that her two daughters and husband—all whom live with Plaintiff—took care of all the household chores. AR 43. Plaintiff also testified at the hearing that she picks up her prescriptions, and when she goes grocery shopping, her daughters go with her and carry the groceries. *Id.* However, in her Function Report, Plaintiff also admitted that she drives and can go out alone, including to the store approximately once a week for one hour. AR 258. In the Third-Party Function Reports cited by the ALJ, Plaintiff's husband stated that Plaintiff shops in stores and by computer for food and medication. AR 199. Similarly, Plaintiff's daughter stated that Plaintiff goes outside generally "2-5 times a week, depending on pain level" and "will sometimes go to the store alone, but only picks up her medicine and light food items" which occurs "once or twice a week, about an hour." AR 302.

The ALJ accurately summarized Plaintiff's testimony regarding her activities of daily living, noting Plaintiff "shopped in stores once a week and continued to drive" and

that "[s]he watched her three year old grandchild two days a week for four hours and provided him lunch and a snack." AR 22 (citing AR 255–62). Earlier in the opinion, the ALJ concluded Plaintiff's "daily activities were inconsistent with her statements about the intensity and persistence of symptoms," reasoning Plaintiff "alleged she could not turn her head, yet she admitted in the Function Reports that she drove" and Plaintiff "alleged that neck pain radiated to her arms and she experienced constant back pain, however, she indicated in the Function Reports that she drove, bathed independently, prepared simple meals, loaded and unloaded the dishwasher, went to the store to pick up medications and light groceries, and watched her three-year old grandson for four hours at a time." AR 25 (citing AR 188–95, 255–62).

Plaintiff testified both that her daughters accompany her and carry the groceries *and* that she can drive and shop in stores for medication and light groceries alone, which the ALJ found required use of upper extremities and thus contradicted Dr. Barba's restrictive limitations. This Court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Tackett*, 180 F.3d at 1098 (internal citation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Id.* (citation omitted); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.") (internal citation and quotation marks omitted). Having considered both the administrative record and the ALJ's opinion as a whole, the Court finds substantial evidence supports the ALJ's conclusion that the restrictive limitations opined by Dr. Barba were inconsistent with Plaintiff's activities of daily living.

Finally, Plaintiff challenges the ALJ's conclusion that "[t]he medical opinion of Dr. Barba was not supported by the objective evidence and was not consistent with evidence from other sources" and "was, therefore, not persuasive." AR 26. Plaintiff contends the ALJ's reliance on the June 2020 treatment notes is misrepresentative of Plaintiff's treatment, as it only related to Plaintiff's lumbar spine and not her cervical spine issues or

right shoulder, which Dr. Barba was also treating. [ECF No. 16 at 15–16.] Defendant contends "not only were Dr. Barba's treatment notes unsupportive of his extreme opinion, but they also contradict the opined physical limitations." [ECF No. 16 at 26.] For example, Dr. Barba opined that Plaintiff could only stand or walk for one hour total in an eight-hour workday, yet his own treatment notes from June 2020 indicated that Plaintiff had normal strength in the lower extremities, normal muscle tone, and a non-antalgic gait. [ECF No. 16 at 26–27] *see* AR 26 (citing AR 804–05).

Contrary to Plaintiff's contention, the ALJ did not selectively reference only one normal examination in his opinion. In addition to the June 2020 treatment notes from Dr. Barba, the ALJ discussed the medical file at length, including Plaintiff's cervical spine issues, earlier in his opinion. *See* AR 24. Specifically, the ALJ found the medical file showed although Plaintiff had "a history of undergoing cervical fusion in September 2016," she "did not make complaints of neck pain until October 2019" and since then, "physical testing of the neck revealed decreased cervical range of motion and positive Spurling's test but no focal neurological deficits." *Id.* (citing AR 385, 742, 791, 795–96, 801, 578). In making this finding, the ALJ relied on Dr. Barba's treatment notes from August, September, and November of 2020. *See* AR 24, 791, 795–96, 800–02. The ALJ also explained that "a CT scan was ordered and demonstrated no more than mild central canal narrowing at C4-C5 and prior C6-C7 fusion." AR 24 (citing AR 578). The ALJ also considered Plaintiff's symptoms of right shoulder pain, finding that "[a]lthough she underwent right shoulder arthroscopic rotator cuff repair surgery on January 3, 2020 . . . within a period of less than 12 consecutive months, physical testing revealed 'dramatically' improved range of motion and 'intact' range of motion." AR 21 (citing AR 708, 855); *see also* AR 25 (finding "the claimant's right shoulder impairment resolved in less than 12 consecutive months"). Thus, the ALJ considered both Plaintiff's cervical spine, right shoulder pain, as well lumbar spine impairments.

Plaintiff asserts that Dr. Barba's opinion is consistent with information reflected in the examinations by the physicians, objective imaging, as well as Plaintiff's testimony that

she experiences pain in her cervical and lumbar spine. [ECF No. 16 at 14.] Plaintiff cites numerous examples of treatment records that "align[] with her continued complaints of low back pain and including sciatic pain," "painful buttock muscle inspection and decreased lumbar spine range of motion," and "tenderness to her cervical spine and lumbar spine upon palpation." [*Id.* at 15.] The Court notes Plaintiff does not specifically address or explain how these support Dr. Barba's opined restrictive limitations. More importantly, however, even if Plaintiff's characterization of the records may be accurate, many of the records also support the ALJ's interpretation of the medical record. For example, Dr. Barba's treatment records from August 4, 2020, which the ALJ cited earlier in the opinion, showed the cervical spine range of motion had "no restriction" for flexion, extension, lateral bending, and lateral rotation, Plaintiff's gait remained non-antalgic, Plaintiff's right shoulder had "active pain free range of motion" and normal strength. AR 801. Similarly, Dr. Barba's treatment notes from September 15, 2020, also relied on by the ALJ, noted that Plaintiff's cervical spine range of motion was normal, she had non-antalgic gait, and her right shoulder had normal strength and "active pain free range of motion." AR 796. Dr. Barba's treatment notes from November 17, 2020, also relied on by the ALJ, described Plaintiff's pain frequency as "intermittent" with a pain level as a "4/10" despite that Plaintiff described the pain as "aching, piercing and sharp." AR 788. The physical exam found a decreased range of motion in Plaintiff's cervical spine, Plaintiff's gait remained non-antalgic, and Plaintiff had "active pain free range of motion" as well as normal strength in Plaintiff's right shoulder. AR 790–91. Further, treatment records from December 2, 2020, indicated that Plaintiff demonstrated "excellent range of motion and good strength throughout her rotator cuff" and noted "intermittent" bilateral upper extremity pain and weakness. AR 847. Thus, upon a detailed review of the entire record, the Court finds substantial evidence supports the ALJ's conclusion that the medical opinion of Dr. Barba is not supported by the objective evidence. *See Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (explaining the "substantial evidence" standard requires reviewing courts to

"reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole").

Plaintiff also contends that the ALJ failed to offer any citation or specific reference to evidence from other sources that the ALJ found inconsistent with Dr. Barba's opinion, and therefore "one is left to guess as to what the ALJ is referring to." [ECF No. 16 at 16.] Defendant contends the other evidence refers to the findings of Drs. Vu and Do, which the ALJ discussed in the immediately preceding paragraph of the ALJ's opinion. [*Id.* at 29.] Defendant further contends that it can reasonably be inferred from the decision that the ALJ discounted Dr. Barba's opinion for being inconsistent with the findings of two other doctors, which was proper under the regulations. [*Id.* at 29–30.]

The regulations define "consistency" as "the extent to which a medical opinion is 'consistent . . . with the evidence *from other medical sources* and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting § 404.1520c(c)(2) (emphasis added). "The more consistent a medical opinion(s) . . . is with the evidence *from other medical sources* and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2) (emphasis added). In the paragraph immediately preceding the ALJ's discussion of Dr. Barba's opinion, the ALJ found the opinions of Drs. Vu and Do were overall persuasive because, apart from the overhead reaching limitation, their opined restrictions were "well supported by the objective evidence of record and consistent with the level of activities of daily living carried out" by Plaintiff. AR 25. In the next paragraph, the ALJ found Dr. Barba's opinion was not persuasive because, *inter alia*, Dr. Barba's opined restrictive limitations were not consistent with Plaintiff's activities of daily living, not supported by the medical records, and not consistent with evidence from other sources, which necessarily included the opinions of Drs. Vu and Do. *Id.* While the ALJ did not specifically name Drs. Vu and Do as "evidence from other sources" in its analysis of Dr. Barba's opinion, the Court is not persuaded the ALJ was required to given the context, as it was clear the ALJ found Dr. Barba's opinion was not consistent with the opinions of Drs. Vu and Do. *See* AR 25; *see* § 404.1520c(b)(2) ("[W]e will explain how we considered the

supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision.").[5] Further, the ALJ also addressed the Third Party Function Reports of Plaintiff's husband and daughter, finding they alleged Plaintiff "had a limited ability to work due to upper extremity pain" yet "in contrary fashion" indicated Plaintiff could perform activities of daily living that required the use of upper extremities such as driving and shopping. AR 26.

In sum, the Court finds substantial evidence supports the ALJ's conclusion that Dr. Barba's opinion was not supported by the objective evidence and not consistent with evidence from other sources. *See Biestek*, 139 S. Ct. at 1154 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal citation omitted)); *Woods*, 32 F.4th at 788 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (internal citation omitted).

Accordingly, the Court finds substantial evidence supports the ALJ's conclusion that Dr. Barba's opinion was not persuasive.

**B.    Whether the ALJ Was Required to Consider Plaintiff's "Demonstrated Historical Willingness to Work" as Part of a "Credibility Assessment"**

Plaintiff next contends the ALJ erred by failing to consider her uninterrupted forty-one-year work history prior to filing her claim when evaluating her subjective statements.

---

[5] In her reply, Plaintiff contends the ALJ's reliance on the opinions of Drs. Vu and Do was "not reasonable since the latest State Agency review occurred in July 2020 . . . before a significant amount of additional evidence, including the treating source's opinion, almost exactly 400 pages, became part of the record." [ECF No. 16 at 33.] To the extent Plaintiff attempts to challenge the ALJ's finding persuasive of Drs. Vu and Do's opinions, Plaintiff did not identify this challenge as a disputed issue and thus it is not properly before the Court. [*See* ECF No. 11 at 3 ("Plaintiff must identify and frame, in a neutral fashion, each of the disputed issues that Plaintiff is raising as grounds for reversal and/or remand."); *see also* ECF No. 16 at 10.] Furthermore, while the state agency medical consultants may not have reviewed any medical records after their opinions issued, the ALJ considered and relied on such records in making his determination in this case.

[ECF No. 16 at 35–36.] Plaintiff acknowledges that SSR 96-7p was rescinded but nevertheless argues the ALJ was required to consider Plaintiff's "demonstrated historical willingness to work as part of the credibility assessment" and erred by failing to do so. [*Id.*] In support, Plaintiff cites to several sources of regulatory authority and case law, including SSR 96-8p, SSR 16-3p, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038–39 (9th Cir. 2007), and *Simmons v. Colvin*, No. ED CV 15-01865-SP, 2016 WL 6436829, at *8 (C.D. Cal. Oct. 31, 2016) (citing 20 C.F.R. § 404.1529(c)(3)), as well as out of circuit cases from the 1980s.

Another judge in this district has already addressed this same legal argument in *Darren Jeffrey C. v. Kijakazi*, No. 21-cv-01012-AHG, 2022 WL 4474261, at *18–19 (S.D. Cal. Sept. 26, 2022), which involves the same Plaintiff's counsel as appears in this case. As Plaintiff acknowledges in her briefing, the Agency rescinded its prior ruling in SSR 96-7p: "Policy Interpretation Ruling Titles II and XVI Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements" and replaced it with SSR 16-3p: "Titles II and XVI: Evaluation of Symptoms in Disability Claims." [*See* ECF No. 16 at 35.]; *see also Darren Jeffrey C.*, 2022 WL 4474261, at *18. Judge Goddard recognized in *Darren Jeffrey C.* that "the reason the Agency eliminated the use of the term 'credibility' in referring to assessments of a claimant's subjective statements regarding his symptoms is that the term implies that the assessment is an evaluation of the claimant's personal character, which is inapposite to a disability determination." *Darren Jeffrey C.*, 2022 WL 4474261, at *19 (quoting SSR 16-3p, 2017 WL 5180304, at *2 with emphasis added) ("we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that ***subjective symptom evaluation is not an examination of an individual's character***"); *see also Petersen v. Berryhill*, 737 F. App'x 329, 331 n.1 (9th Cir. 2018) ("Effective March 16, 2016, however, the Social Security Administration rescinded SSR 96-7p and eliminated the term 'credibility' in order to 'clarify that subjective symptom evaluation is not an examination of an individual's character.'") (quoting SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16,

2016)). For the same reason, Judge Goddard rejected the plaintiff's argument that the ALJ was required to consider the plaintiff's exemplary work history in evaluating whether his statements regarding the severity, persistence, and limiting effects of his symptoms were consistent with the objective evidence. *Darren Jeffrey C.*, 2022 WL 4474261, at *19. "The ALJ should no more credit a claimant for a strong work ethic than he should discredit a claimant for untrustworthiness. The claimant's personal character is, in short, irrelevant to the analysis." *Id.*

Plaintiff also cites to 20 C.F.R. § 404.1529(c)(3) for the proposition that agency policy "require[s] the ALJ to consider the claimant's demonstrated historical willingness to work as part of the credibility assessment." [ECF No. 16 at 35.] The Court in *Darren Jeffrey* also rejected this argument, explaining:

> When read in full, the regulation makes clear that the ALJ's charge is to provide a holistic assessment of both objective medical evidence ***and*** the claimant's subjective reports of symptom-related functional limitations and restrictions, without necessarily privileging one type of information over the other, based on the Agency's recognition that "symptoms, such as pain, are subjective and difficult to quantify[.]" 20 C.F.R. § 404.1529(c)(3). While that holistic assessment does indeed require the ALJ to look to the claimant's prior work record, the purpose of considering such evidence is to determine whether a claimant's subjective reports "can reasonably be accepted as consistent with the objective medical evidence and other evidence," not to conduct an assessment of the claimant's personal character based on his work ethic.                                                                               .

*Darren Jeffrey C.*, 2022 WL 4474261, at *19 (citing 20 C.F.R. § 404.1529(c)(3)).

The Court finds the reasoning of *Darren Jeffrey C.* persuasive and adopts and applies it here. Because the ALJ does not evaluate credibility, the ALJ did not err by failing to consider Plaintiff's prior work history as a "highly relevant credibility factor" or make a "credibility finding" as Plaintiff contends. *See Eugene A. P. v. Kijakazi*, No. 22-cv-01657, 2023 WL 6373887, at *9 (C.D. Cal. Aug. 2, 2023) ("Because the ALJ does not evaluate credibility, the ALJ did not err when she failed to consider plaintiff's prior work history in a 'credibility assessment.'").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.    CONCLUSION**

Based on the foregoing analysis, the Court resolves the Joint Motion for Judicial Review [ECF No. 16] in Defendant's favor, **DENIES** Plaintiff's motion to reverse the judgment and remand the matter to the Commissioner, and **AFFIRMS** the final decision of the Commissioner of Social Security.

The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated:  February 27, 2024

HON. MICHELLE M. PETTIT
United States Magistrate Judge

22-cv-0757-MMP